UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | CAUSE NO. 3:07-CR-132(01)RM |
| ) | |
| ORLANDO WASHINGTON ) | |

OPINION and ORDER

On November 14, 2007, a two-count indictment was returned against Orlando Washington charging him with possession with intent to distribute crack cocaine (Count 1) and being a felon in possession of a firearm (Count 2). Mr. Washington has pleaded not guilty, and trial is currently set for February 11, 2008.

Mr. Washington is before the court seeking suppression of all items seized during the stop of the vehicle in which he was riding. Mr. Washington contends the police illegally stopped and searched the vehicle and his person in violation of the Fourth and Fourteenth Amendments to the United States Constitution. The government has filed its opposition to suppression of the items seized. Because the facts set forth in Mr. Washington's motion would not entitle him to a suppression order relating to the items seized, no evidentiary hearing on his motion is warranted. See United States v. McGaughy, 485 F.3d 965, 969 (7th Cir. 2007) ("We have emphasized the necessity of materiality in any factual disputes that are presented to the district court as a prerequisite for an evidentiary hearing."); United States v. Villegas, 388 F.3d 317, 324 (7th Cir. 2004)

("[E]videntiary hearings on motions to suppress are not granted as a matter of course but are held only when the defendant alleges sufficient facts which if proven would justify relief. . . . [A] court is obliged to hold a hearing only if the difference in facts is material, that is, only if the disputed fact makes a difference in the outcome.").

FACTS[1]

On October 8, 2007, at approximately 1:35 a.m., Patrolman Tyler Jackey of the South Bend Police Department observed a 1996 Pontiac Bonneville traveling in a southwesterly direction on South Bend Avenue turn south onto Hill Street without using a turn signal. Officer Jackey activated his overhead lights and stopped the vehicle for violation of Indiana Code § 9-21-8-25.[2] Officer Jackey got out of his car, approached the stopped vehicle from the rear passenger side, and made contact with Mr. Washington, who was the front seat passenger. Officer Jackey asked Mr. Washington and Bradley Walls, the car's driver, for identification. Mr. Washington produced an Indiana identification card and Mr. Walls said he didn't have any identification in his possession. Officer Jackey noticed the odor of burnt marijuana coming from the car. Officer Jackey asked Mr.

---

[1] The facts are taken from the government's response brief. Mr. Washington's motion doesn't include a discussion of the relevant facts and he didn't challenge the government's version of the facts in his reply.

[2] Section 9-21-8-25 provides in pertinent part that "[a] signal of intention to turn right or left shall be given continuously during not less than the last two hundred feet traveled by a vehicle before turning or changing lanes."

Walls to get out of the car and step over to the patrol car so that Officer Jackey could try to verify Mr. Walls' driving status through the Indiana Bureau of Motor Vehicles data base. Officer Jackey told Mr. Walls he wasn't under arrest.

Officer Jackey next asked Mr. Washington to exit the car; Officer Jackey patted him down for weapons and directed him to sit on the curb. Officer Jackey noted that Mr. Washington was shaking and stuttering his speech. Having smelled marijuana in the car, Officer Jackey conducted a search of the vehicle. He found a substantial amount of cash in the glove compartment – cash that Mr. Washington indicated was his – and a Walther Arms .380 caliber pistol between the center console and the driver's seat. Officer Jackey placed Mr. Washington in wrist restraints and South Bend Police Patrolman Gray, who had arrived at the scene to assist, escorted Mr. Washington to his patrol car. Officer Gray reports that at that time Mr. Washington made several shaking motions with his body.

Officer Gray then returned to the passenger side of the stopped vehicle and saw two small clear plastic baggies on the ground. Officer Gray reports that there were no baggies in the road when he originally pulled up behind Officer Jackey's car. A field test conducted on the substance in the baggies revealed the presence of cocaine base.

The officers collected the cash, guns, and drugs as evidence and arrested Messrs. Washington and Walls, who were transported to the St. Joseph County Jail for processing. Mr. Walls was issued a citation for failure to use a turn signal.

DISCUSSION

Mr. Washington first argues that the traffic stop was illegal. Mr. Washington asserts that Officer Jackey mistakenly believed that the display of a turn signal was necessary at the intersection of South Bend Avenue and Hill Street when, according to Mr. Washington, no stop or signal at that intersection is required. Mr. Washington says that while Indiana Code § 9-21-9-25 was the statute cited as having been violated, he believes the more applicable statute is Indiana Code § 9-21-9-24.[3] Mr. Washington claims that vehicles traveling on South Bend Avenue proceed via a "direct course" onto Hill Street without the need to stop or signal; he notes, too, that no traffic control device at that intersection requires southwest bound traffic "to stop or in fact turn." According to Mr. Washington, "anyone who travels in that direction as [defense counsel] has in his daily route to work will witness that almost all vehicles do not use their turn signal by taking this route including the South Bend police vehicle [defense counsel] was behind on December 26th at approximately 11:20 a.m." Reply, ¶ 5. Mr. Washington concludes that because the stop of the vehicle in which he was riding was illegal, the weapon and contraband seized were "fruits of the poisonous tree" and must be suppressed.

---

[3] A person may not "turn a vehicle from a direct course upon a highway or change from one traffic lane to another, unless the movement can be made with reasonable safety. Before making a movement described in this section, a person shall give a clearly audible signal by sounding the horn if any pedestrian may be affected by the movement and give an appropriate stop or turn signal . . . if any other vehicle may be affected by the movement." IND. CODE § 9-21-8-24.

4

Indiana Code §§ 9-21-8-25 and 9-21-8-24, which Mr. Washington cites to support his claim that no turn signal at the South Bend Avenue/Hill Street intersection is necessary, support a contrary finding: a turn signal is necessary. A driver proceeding in a southwesterly direction on South Bend Avenue who reaches its intersection with Hill Street has the option of turning left or turning right – proceeding straight ahead on a "direct course" would land the driver in the business located at that intersection – and the act of making a turn requires the use of a turn signal as required by Sections 9-21-8-24 and 9-21-8-25. Indiana law provides that a failure to use a turn signal to indicate a turn or a change of lanes violates Indiana Code § 9-21-8-25. *See* Peck v. State, 712 N.E.2d 951 (Ind. 1999) ("Defendant did not signal before turning and so violated Ind. Code § 9-21-8-25."); Datzek v. State, 838 N.E.2d 1149, 1156 (Ind. Ct. App. 2005) ("Datzek violated Ind. Code § 9-21-8-25 by failing to use his turn signal when turning from the parking lot."); *see also* Love v. State, 741 N.E.2d 789, 791 (Ind. Ct. App. 2001) (defendant's argument regarding the legality of a traffic stop based on Indiana Code § 9-21-8-4 rejected as "unavailing, given that the driver violated Indiana Code Section 9-21-8-25 by failing to activate his right turn signal before making a right turn"). The plain language of Indiana Code § 9-21-8-25 contains "no restrictions that it only applies in certain situations or on certain roadways." Datzek v. State, 838 N.E.2d 1149, 1155 (Ind. Ct. App. 2005).

"[T]he decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. Probable cause

5

exists when the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense." United States v. Muriel, 418 F.3d 720, 724 (7th Cir. 2005) (internal citations and quotations omitted). Mr. Washington relies on his belief that no turn signal was required and his counsel's observation that other drivers don't always use turn signals at that intersection, but the question before the court is the reasonableness of the officer's belief that a violation occurred. *See* United States v. Cashman, 216 F.3d 582, 587 (7th Cir. 2000) ("The propriety of the traffic stop does not depend . . . on whether Cashman was actually guilty of committing a traffic offense by driving a vehicle with an excessively cracked windshield. The pertinent question instead is whether it was reasonable for Trooper Spetz to *believe* that the windshield was cracked to an impermissible degree."). Based on the clear language of Indiana Code § 9-21-8-25, it was reasonable for Officer Jackey to believe that use of a turn signal at the South Bend Avenue/Hill Street intersection was necessary. When the car in which Mr. Washington was riding turned onto Hill Street without using a turn signal, Officer Jackey reasonably believed a traffic violation had occurred and he had probable cause to stop the vehicle. United States v. Wendt, 465 F.3d 814, 816 (7th Cir. 2006).

Mr. Washington next argues that after stopping the vehicle, police made an unlawful warrantless search and seizure of his person without probable cause that he had committed a crime. Mr. Washington says that a police officer who has stopped a car for a minor traffic violation may not ask for permission to search the

6

vehicle or detain a driver to "fish" for additional evidence and, under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), a stop of a person requires an officer to have a reasonable suspicion of criminal activity and an arrest of a person requires an officer to have probable cause rather than reasonable suspicion. Mr. Washington concludes that the stop and detention of the vehicle in which he was a passenger "was an illegal stop and therefore was done without probable cause."

The government responds that Officer Jackey's search of the vehicle was proper under the Fourth Amendment because the officer had probable cause to believe that the car contained marijuana. The government explains that when Officer Jackey first stopped the vehicle for a traffic violation, he was justified in asking the men to exit the vehicle pursuant to <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 111 (1997) (driver may be ordered to exit car), and <u>Maryland v. Wilson</u>, 519 U.S. 408, 410 (1997) (passengers may be ordered out of the vehicle). The smell of burnt marijuana inside the vehicle provided Officer Jackey with probable cause to believe that a crime was being committed. Thereafter no warrant was required to search the vehicle because Officer Jackey had probable cause to believe that the vehicle contained contraband. In addition, once Officer Jackey placed Mr. Washington and Mr. Walls under arrest, he was entitled to make an inventory search of the vehicle.

Under <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968), police may conduct an investigatory traffic stop "if they have reasonable suspicion based on articulable facts that a crime is about to be or has been committed" and may conduct a

7

search "even if the defendant did not actually commit an offense as long as the officer reasonably believed an offense occurred." United States v. McDonald, 453 F.3d 958, 960 (7th Cir. 2006). As discussed above, Officer Jackey's belief that a traffic violation had occurred was reasonable and his stop of the vehicle was proper.

Following the stop of the vehicle, Officer Jackey properly spoke with Messrs. Washington and Walls, which resulted in the officer's learning that Mr. Walls, the driver of the car, had no driver's license or other identification in his possession. United States v. Muriel, 418 F.3d 720, 726 (7th Cir. 2005) ("[A]s part of the stop, police may ask the vehicle's occupants a moderate number of questions and request their identification."). Officer Jackey was justified in detaining the men to conduct an investigation into whether Mr. Walls had a valid driver's license. United States v. Martin, 422 F.3d 597, 602 (7th Cir. 2005) ("failure to produce a valid driver's license necessitated additional questioning while the trooper ascertained whether or not Mr. Martin was a licensed driver"). Officer Jackey's detection of the odor of burnt marijuana in the vehicle justified a reasonable belief by the officer that the vehicle contained contraband or evidence of criminal activity and constituted probable cause to search the vehicle. United States v. McDonald, 453 F.3d 958, 960 (7th Cir. 2006); *see also* United States v. Neumann, 183 F.3d 753, 756 (8th Cir. 1999) (odor of alcohol provided probable cause to search vehicle); United States v. Taylor, 162 F.3d 12, 21 (1st Cir. 1998) (marijuana odor provided probable cause to search car for drugs). Although a search of the vehicle

8

pursuant to the traffic stop alone may not have been proper, <u>Knowles v. Iowa</u>, 525 U.S. 113 (1998); <u>New York v. Belton</u>, 453 U.S. 454 (1981), under the totality of the circumstances, the information lawfully obtained by Officer Jackey provided him with probable cause to suspect that the occupants of the vehicle were engaged in criminal conduct, justifying his prolonging the stop to initiate a reasonable investigation, <u>United States v. Figueroa-Espana</u>, _ F.3d _, _, 2007 WL 4553645, *4 (7th Cir. Dec. 28, 2007), conducting a warrantless search of the vehicle for contraband, <u>Valance v. Wisel</u>, 110 F.3d 1269, 1279 (7th Cir. 1997), and arresting Mr. Washington for possession of drugs and a firearm. <u>United States v. Jackson</u>, 377 F.3d 715, 716 (7th Cir. 2004).

## CONCLUSION

Based on the foregoing, the court concludes that the stop of the vehicle in which Mr. Washington was riding was proper and the officers had probable cause to search the vehicle and its occupants. Mr. Washington's constitution rights were not violated and his motion to suppress [docket # 9] is, therefore, DENIED. Trial remains scheduled for February 11, 2008 at 9:30 a.m.

SO ORDERED.

ENTERED:   January 8, 2008

                                      /s/ Robert L. Miller, Jr.
                                      Chief Judge
                                      United States District Court